Good morning. May it please the court. I'm Stefan Love and I'm here on behalf of Alameda County and two of its Sheriff's deputies. Would you like to reserve any time for rebuttal? Yes, Your Honor. I'd like to reserve about three minutes for rebuttal. And then just watch the clock because the 15 minutes includes your rebuttal time. There are two fundamental procedural errors, each of which requires reversal of the judgment below. The first concerns qualified immunity. The district court asked the jury to decide a question of law. The contours have clearly established law as relevant to this case. That was a highly prejudicial error. It precluded defendants from making a number of viable qualified immunity defenses and it requires a new trial of all claims. The second procedural error concerns due process. There was a total absence of due process protections. I'm going back to the first issue. I just want to put a finer point on it. There's claims against I think Officer Holland and then the claim, well, there was only one claim against Officer Pope for the search of the passengers that went to the jury. Is that correct? Yes, that's correct. Yes. And I believe that district court essentially ruled on summary judgment the qualified immunity step one analysis, finding that there was the search violated the Fourth Amendment, that Officer Pope's search for the passengers' identifications violated the Fourth Amendment. I don't see anything in your appellate briefing that challenges that essentially step one determination by the district court. And the district court presented only the step two question to the jury. Is that correct? That's correct. And it's also that step two question that this court's binding precedent in Morales v. Frye requires to be decided by a court, not a jury. What's interesting here is whether or not, at least from my perspective, whether or not the there's harmless, the error here was harmless, at least with respect to the verdict on liability for the constitutional violations. The way this whole issue about qualified immunity came up, it was more like an affirmative defense that he let go to the jury, which was under our case law, looks like that was not the right thing to do. But how did that prejudice you? I mean, you don't challenge the instructions on the merits. Was there a constitutional violation? The jury said yes. And then your response is, well, we're entitled to immunity. But how did that prejudice anybody? I mean, the plaintiff's prevailed. Morales was a little bit different in Morales. The court never considered the question whether deputies' acts violated. Yeah, I understand. But I guess let me take this one step further. Why wouldn't it be proper just to remand the qualified immunity question back to the district court and tell the district court, look, now you've heard all the evidence. Now you've got to decide the qualified immunity issue. Are these officers, did they act reasonably under the circumstances or whatever? Because that's a different inquiry than whether or not there's a constitutional violation. The problem with that approach is that there are factual disputes relevant to qualified immunity. Well, but the jury heard all the evidence, found a constitutional violation. And now when you look at that, you can easily resolve all factual disputes in favor of the plaintiffs because that's what the jury did. They found a constitutional violation. And that's what happened in Morales. If you read Morales carefully, when you get to the second part of Morales, that's what the court did. The problem is there was a general verdict under Section 1983 against Deputy Holland. And that verdict could have rested on any of four different constitutional theories. We do have case law that says when the jury issues a general verdict, whether there was a violation, we just resolve all factual disputes in favor of the plaintiffs. And the district court can then decide the qualified immunity issues by resolving all the factual disputes that way. So they are allowed to use a general verdict for the step one analysis. So I understand you're arguing v. essentially, well, this is different because they didn't have a, the general verdict should have at least identified which violations occurred. Is that your argument? Yes. Basically, there are underlying factual disputes that make it impossible for the district court to properly resolve qualified immunity. And do we have any case, do you have any case law to suggest that what happened here, which was the general verdict, just that violations occurred, is not enough to then trigger what Judge Pius is asking, where the district court can then just resolve all the factual disputes in favor of the plaintiffs? We do have that case law. I want to pick one qualified immunity defense that was available. And this concerns the disabled placard. Plaintiffs admitted in post-trial briefing, there's, it's not clearly established that a police officer needs reasonable suspicion to initially detain someone to investigate their disabled placard. So plaintiffs admitted, at least in principle, that qualified immunity defense is right on the law. There's no case law making that conduct unlawful. The jury here never found either way whether a reasonable officer could have initiated this detention in part to investigate the disabled placard. Well, if there was a factual dispute about where, whether the officer saw the, the placard, because we do know that it was hanging, that it looks like they found a constitutional violation, you would just, you would assume that they've made that factual finding in favor of the plaintiffs. I don't agree. I think the jury Let me ask you this. Who, did you ever submit a set of interrogatory questions to the judge to say, hey, look, give these questions to the, to the jury so we know exactly what, what, what's critical? No, Your Honor. And that's because the defense had actually proposed that exact course of action partway through trial. The defense counsel had asked the judge, the way this is usually decided is you give the jury the relevant factual questions narrowed to factual disputes such as the disabled placard. And then based on the answers to those interrogatories, the court decides the issue. So But in our cases, we say that it's permissive to do the special interrogatories and that it is also permissive for the court to just give the jury, allow the jury to just issue a general verdict on this step one question. Our argument is not that it's impermissible to get a general verdict on this step one question. Our argument is, again, stick with this disabled placard example. On the facts here, a reasonable officer could have believed this initial detention was lawful to investigate the disabled placard. There's no case law suggesting it's clearly unlawful. Moreover, there is evidence on the defense side that, and it's pretty good evidence, that the deputies in part initiated this encounter to investigate that disabled placard. Finally, the jury verdict absolutely So is your argument that you would have been entitled to qualified immunity for the whole detention? Not necessarily, Your Honor. Because, you know, you look at, you know, these cases are interesting because you go step by step, usually. You know, so maybe they could have, you know, started their investigation, but then did they need reasonable suspicion to search the car? The problem is Did they need probable cause to, when they put him in the separate vehicles and handcuffs, you know, did that rise to the level of an arrest? The problem is we never even got there because we don't know the factual predicate for the jury's verdict. And I want to come back to Well, we know that the factual, we know that they found a constitutional violation in favor of the plaintiffs. I want to also respond to one of Judge Sung's point, which I, the question is, do plaintiffs, are they entitled to get all disputed facts resolved in their favor? And on harmless error analysis, the answer is no. Well, I think in a normal, if, in a case where, I think it's very clear our precedent, where, let's say there's one constitutional violation at issue, and if the court just asks, the jury just delivers a general verdict, a violation, that violation occurred, and then there's still factual disputes that could affect the step two analysis, our case law is very clear that the district court, in conducting that step two analysis, resolves all the factual disputes in favor of the plaintiffs when there is a general verdict. If there were special interrogatories, the court is bound by the specific factual findings of the jury, but in the absence of that, where there is just a general verdict, every factual dispute is resolved in favor of the plaintiffs. So here we have a general verdict that violations occurred, so why wouldn't the district court in deciding the step two analysis just, why wouldn't they be able to, under our case law, just resolve all the factual disputes in favor of the plaintiffs? Because we're not challenging the general verdict on step one. We're saying, before we even got there, there was a procedural error, a question went to the jury that shouldn't have. Now, to run with the unlawful detention theory of liability. Step one of the qualified meaning analysis is whether a violation occurred, and the jury did answer that specific question? Yes, but the jury might have also been thinking about equal protection when it answered that question. One, was there an error? It's pretty clear there was, giving this to the jury. Question number two is, was that error harmful? And when that is the inquiry, the standard in this circuit is, unlike sufficiency of the evidence review, the prevailing party is not entitled to have disputed factual issues decided in its favor. So instead, the court examines all relevant parts of the record. And again, to stick with the disabled placard example, here there's evidence that deputies were motivated in part to investigate the placard, and there's a clear absence of case law making a detention on that basis unlawful. So was there error? Yes. Was it harmful? Yes, because it precluded defendants from asserting, for one thing, along with the others in our brief, a disabled placard-based qualified inquiry. Well, I don't want to get in an argument with you about this, but it seems to me like we could just send it back to the district court to consider that. But could you move on to your other issues that you raised? They're also pretty interesting. That is the Monell liability and the damages that were returned. Yes. So let's turn to the damages issue. So there's a due process error. And it's important to remember how this issue came about in the course of the post-trial phase. The initial judgment was just for $8.25 million, didn't specify where that's allocated. Post-trial briefing, each party respectively presumed, oh, this seems like it probably included a treble damages penalty. They adopted that presumption for tactical reasons. That presumption that they adopted didn't make it the judgment. The judgment was still this blank $8.25 million. Down the line, district court asked for further briefing and raised the issue of a due process problem if there's a punitive award. Defendants said, yes, that's a due process issue if this award was punitive. Then the district court amended the judgment in its order on the post-trial motions, and that's when this due process error kind of bore fruit. So this isn't a complaint. It's trying to characterize it. It came about certainly in an unusual way, but the result is an admitted $5 million. Didn't the defendants ask for this particular verdict form that the judge used? They either asked for it or didn't object to it. I thought they asked for it. They wanted a simple verdict as possible. And that part of the problem is because the verdict form didn't carve out the damages, compensatory damages of $100,000, damages under the Bain Act of whatever, and then trouble. We don't really know that because the verdict form didn't add. I think the judge wanted to do that, and then the county said, no, no, no, no. Let's just have a general verdict, basically. We're not asserting there's an error in the verdict form, Your Honor. We're asserting there's a due process problem, and it didn't really come to fruition until three months after the jury had gone home. And that, let's call it a squishy waiver, doesn't justify upholding an unlawful $5 million punitive award. So my understanding that we're talking about the trouble damages for the Bain Act claim, my understanding is that California says that distinguishes between statutory penalties or damages and punitive damages in that there's case law in California that says when a statute caps damages, as it does here, to a trouble damages award, that that's not the same due process protections are not required. And so there's a case that says, you know, it's not the plaintiff's burden. When there's a trouble damages cap, it's not the plaintiff's burden to show that the defendant can afford to pay. So why doesn't that case law apply here? Your Honor, I'm not familiar with that case. I'm familiar with the Robert L. Cloud case, which is the Cal Court of Appeal decision strongly implying the opposite. That case held that where you have a punitive penalty statute, which allows for double actual damages, the plaintiff still bears the burden of producing evidence of financial condition. And that statute, that's the Robert L. Cloud v. Mike Sell case. And so that's not, you know, squarely a standpoint in the sense of interpreting the Bain Act, but it's a very closely analogous statute. I see I'm just about out of time. I am out of time. I think we should give a few extra minutes because we're consolidating arguments. And I still have three minutes for rebuttal. Let me ask you, I got a few more questions on these damages issues. Is there any California case that squarely says damages under the Bain Act are punitive damages? Analogous to general punitive damages. There's no case that says analogous to, it's Cal Civil Code 3294, that's the general punitive damages statute. There's no case saying quite what Your Honor just said, but there is a case, a Cal Supreme Court case, talking about the penalty language in the penalty provision of the Bain Act that says this language reflects the legislative intent to punish intentional and morally offensive conduct. And that's been interpreted to mean it's punitive. And the district court didn't say that. So let me ask you this. Okay. So the Trier effect has discretion to trouble the compensatory damages under the Bain Act, correct? Yes, Your Honor. It's actually a cap. So the Trier effect can get anywhere within that  Is there any case law that says you have to instruct the Trier effect, the jury, on how they should exercise that discretion? I'm not aware of any California case law, but under Federal case law, there's no question that when a jury is awarding punitive damages. Well, I think that's true as a general matter. Do you have any Federal case law that says when there's a cap, when there's a three-times cap on the award, as it is here, that there still requires instructions on jury discretion? The closest on-point case, and it's a Fourth Circuit case, it's not a Ninth Circuit case, is, let me find it, it's called, it's a Fourth Circuit case, Johnson v. Hugo's Skateway. That case interpreted a statute which allows for a punitive award up to $350,000. So that's a very solid, you know, firm cap. And that case held, the jury there did not have, should have been instructed on the purpose of punitive damages. It wasn't. That's a due process violation. So the same ought to go for a treble damages penalty, especially in an award that can go as high as $5 million or even higher in some cases. So you have no Ninth Circuit and no California law on that point? Specifically saying the jury needs instruction. Even when there's a cap? No, not that we found. Okay. Thank you. I have some questions, if I could. Yes, please go ahead, Cal. We'll give you some extra time, and you will get three minutes for rebuttal. I'd like to go back to your first, your first request was reverse and remand. And I think where Judge Pius was going was, is this a situation where there could be a reversal, but then direct the district court to determine as a matter of law whether the law was clearly established. Would you address that? Because you're arguing for a new trial. I think he's asking whether it can be done without a new trial. The issue I foresee there is, and let's, I've gone ahead and, you know, I've responded to the violation. But I think that even if we run with that assumption, it becomes very difficult for the district court to determine whether there was a violation of clearly established law. Let's go ahead and assume the jury found there was an unlawful detention here and an unlawful search running on those Fourth Amendment claims. The district court says, well, how did that come about? What exactly was the unlawful detention? Was it related to the placard? Was it related to an absence of reasonable suspicion? The same goes for the search. Which search was unlawful? Was it only Deputy Pope's? Was it also Deputy Holland's? If the latter, why? How? So as a practical matter, I don't see how the district court could address that issue. All right. I understand your argument. Could I also then ask about ratification? Do you have any authority that would guide us on this is or is not enough for ratification? Yes, Your Honor. First, we have the principle that ratification requires more than a mere refusal to overrule a subordinate. And a refusal to overrule is exactly what we have here. We have, and this is Lieutenant Brody's testimony regarding Sheriff Ahearn. So Ahearn is the policymaker. Brody wrote the investigation. Brody says the sheriff's notation here indicates he's saying no further action, which itself would say the complaint being unfounded is what stands. That's Brody saying all that Ahearn did is let this thing stand. That is it couldn't think of a clear example. Right. But the finding of unfounded also, according to the record, means that there was a finding that the defendant's actions were consistent with policy, right? And that there was expert testimony to that effect, right? So why isn't that enough given the standard of review where we're deferring in large part to the jury's finding of ratification? Why isn't that enough for the jury to say that there was a finding that the defendant's conduct was consistent with policy and that's enough for ratification? There's a good argument, or at least a decent argument, that Lieutenant Brody approved of by concluding unfounded. But Lieutenant Brody's not the policymaker. Plaintiffs need to show that Sheriff Ahearn approved of the deputy's conduct, not that he merely approved of the investigation. Right. But he says, I reviewed it and I agree. He didn't say, I agree. He said, no further action. I mean, the jury was entitled to draw that inference, though, wasn't it? Not on our case law. And the clearest case on our side is the Ninth Circuit case of Trevino v. Gates. That case involved an officer, involved shooting. An LAPD officer shot a suspect. And there was a punitive damages award against that officer. The city council reviewed the details of the shooting and approved paying the punitive damages award on behalf of that officer. This court held that's not ratification. So to be sure, an argument could be made that the council approved of the shooting. It voted for paying for this punitive damages award. Well, a council, an attorney saying, go ahead and pay punitive damages seems to be very different from saying we're not going to find any problem here. I very much agree. The problem is it was Lieutenant Brody who said, I've thoroughly reviewed this and I find a problem. Sheriff Ahearn didn't do that. He wrote, no further action required. All he did was put into words the failure to overrule, that the case law is clear, does not suffice to show ratification. Did we assume that the jury assumed or found or determined that he had read thoroughly, that he had read the report and considered it? The jury, I suppose, could have inferred that he read the report. And they heard the evidence from the experts and whatnot? They could have inferred that he reviewed it and he wrote, no further action required though. And that's not approval. Plaintiff's very best case on this issue is Fuller v. City of Oakland. Why couldn't, is that a finding of fact by the jury? What, the inference that he read the report? Yes, that he read the report and that he approved it. That he approved the conduct. The approval goes too far. There's no, at this point we get to the legal question of what suffices to show approval. And so we can't assume the jury found the ultimate fact of approval. That's ultimately a legal standard. But they could draw a reasonable factual inference that he read the report and by saying, no further action required, was not disapproving of it. Yes, but there's no case saying the absence of disapproval is ratification. In fact, the exact opposite. The failure to overrule, which would be the absence of disapproval, is not ratification. There needs to be more and plaintiffs didn't have it here. Could I ask one final question? Even if you win on everything else, would you acknowledge Bain Act liability as to the officer and as to the county? No, Your Honor. Okay, and why not? The effect of the qualified immunity error was to give the jury the impression that the law of detention and search is crystal clear. Anybody violating that law would have known. It's an element of Bain Act liability that Deputy Holland intentionally violated plaintiffs' rights or at least did so with reckless disregard. And the jury was made prejudicially more likely of making that finding against Deputy Holland because it had the qualified immunity instructions telling it all this law is very clearly established. That prejudices the verdict on the Bain Act liability. Since qualified immunity doesn't seem to be available under the Bain Act, do you have any authority for this bleed-over concept that you're using here? The authority is an argument from harmful and harmless error, the basic principle of that. There was this error of law giving the question of clearly established law to the jury. And as a consequence of that, again, this Court's task is to read every relevant part of the record. The consequence of that error was that the jury was prejudicially more likely to find Deputy Holland acted with intent or at least reckless disregard to violate plaintiffs' rights. Thank you. That's my question. Thank you, Counsel. You'll have three minutes. Thank you. Good morning. Good morning. Good morning. May it please the Court. Joseph May for Plaintiffs and Appellees. I'm here with my colleagues Brian Gieringer and Craig Peters. I would like to start by briefly discussing a case that actually wasn't cited in the briefs. I think it's pretty illustrative and highlights some of the points that we did make in our briefs. And that case is Washington v. Lambert, 98 F. 3rd, 1181, an opinion authored by Judge Reinhart. And one of the quotes from the case at page 1187 is, notwithstanding the views of some legal theoreticians, as a practical matter, neither society nor our enforcement of the laws is yet colorblind. And that was in 1996. The Court went on in the opinion to say, quote, there's a moving violation that many African Americans know as DWB, driving while black. And it cites an authority and says, quote, these encounters are humiliating, damaging to the detainee's self-esteem and reinforce the reality that racism and intolerance are for many African Americans a regular part of their daily lives. And what the majority of the Court ultimately concluded was that the case before them, quote, presents quite simply an egregious violation of the Fourth Amendment, close quote. That case involved, briefly, 19 armed robberies in Los Angeles committed by a taller black man and a shorter black man. That was the description. They had used a variety of cars, so they couldn't be tied to any particular vehicle. And there were two black men, one taller and one shorter, in a Carl's Jr. restaurant in Santa Monica. And the officers suspected that they were the culprits, followed them into a garage, had them get out of the car at gunpoint, get on the ground, put them in handcuffs, frisked them, had them in a police car. And in that case, they knew how many suspects, there were two, what the race was, they were both black, approximate height. And in that case, the Court found the violation to be egregious. If that case was egregious, we would submit that this case is actually disgusting. It sounds, you know, it sounds like an unfortunate case, but I'm all honest, I didn't read it. I understand and know. I mean, why don't you move on to the issues that we need to decide in order to either affirm the verdict here or remand in part or, you know. I'm happy to do that. It was by way of interpretation. I understand. I understand. Yeah, I appreciate that. Before I get to the points that were actually raised, I think one of our strongest arguments that was in the brief is forfeiture. Rule 51 of the Federal Rules of Civil Procedure requires strict compliance. There are a few very narrow exceptions to the rule, but essentially, you must make a specific objection to an instruction, either one that you think should be given or one that you don't think should be given. Well, it was pretty clear here that the district judge was going to send the qualified immunity question to the jury. He just made it clear that's what he was going to do. That's what he was going to do. However... What good does an objection do at that point when the judge has made it abundantly clear? What we have here is that part of the record where he's discussing qualified immunity and he said, you know, please give my speech to the Ninth Circuit. He said, you know, I know plaintiffs take issue with this. We filed a very robust objection. He said, maybe the defendants don't like it, too, and you can take it up on appeal. Right after that, immediately after that in the record, the court dealt with another issue, which was whether the county should be on the verdict form for apportionment. And Mr. Gilbert, trial counsel for the defendants, said, I don't think that's appropriate because it's not a separate liability for the county. The liability is coextensive with the other claims. And Judge Alsup looked at me and I said, you know what, Your Honor, this might be the only thing in the entire case that counsel has agreed on. It was a very contentious matter. And the judge said, well, if that's so, let me take another look at it. And what the judge did was remove the line for the county from the verdict form. What about the instructions of the verdict form that just asked for whether the violations occurred without specifying which ones? Was there any objection from the defense to that? Not only was there not an objection, we cite in our brief to the portion of the record where Mr. Gilbert asked for a general verdict form. He said, we request the general verdict form that essentially says as to first plaintiff, do they prevail against this defendant and so forth. And so the verdict form that we got was essentially what the defense asked for. So that would be, if an error, an invited error. Going on to another point, I think, aside from forfeiture, as to both the qualified immunity instructions where there were no objections made, just a comment in the record. And we filed a motion asking for the case to be submitted on, sorry, I might be in the wrong place. Well, at any rate, I think that Judge Fitzwater made a good point about the Bain Act essentially would moot all of these issues. Qualified immunity doesn't apply to the Bain Act. The defense didn't challenge the instruction as to liability on the Bain Act. It doesn't challenge that there was sufficient evidence to support the finding on the Bain Act. And I haven't seen or heard anything that suggests that some kind of error giving qualified immunity to the jury would somehow infect or... What about the taint argument? Did the defense counsel raise that to the district court judge that the qualified immunity instructions would taint the Bain Act? Well, of course, no. The defendants didn't raise any argument about qualified immunity being in the instructions and were given many opportunities to do so. So I understand the judge had made it very clear that they were going to send the qualified immunity question to the jury. But once that message was made, did the defense counsel have any objections to the manner in which or the wording of those instructions? No, not that I can recall. And I think it's telling that the defense never did object, given all the opportunities to have the qualified immunity go to the jury. And we were the ones who so vehemently objected. I think that just shows that the only party that would be prejudiced by this additional instruction and question on a verdict form is the plaintiffs. We had to prove prong one, and we had to prove that every reasonable officer would have known that they were violating the Constitution. The defendants were happy to sit back and let that go to the jury. I recall that the district court said that you or the plaintiffs were the most unhappy with his decision. And rightfully so. It gave us an additional hurdle to overcome, which we did. And so it's clear that the jury found both the violation and that all reasonable officers would know of it. I know that there is the Morales case, which I think is probably the better case. It's a more recent case. And the Morales case distinguishes the previous cases that took the approach that some of the other circuits do, which is that there's a mixed question of law and fact. I mean, the Morales case basically, Morales basically, I think, lays out what should happen. And I would tend to agree. I would just note that the analysis, I tried to follow it. It was Saussure versus Katz case. Somehow changed the analysis back in 2001. And I went to Saussure and I read through Saussure. I didn't see anything in Saussure that said that this is only a legal question for the judge. In fact, I have page 205 at Saussure. Well, we have Morales, too. And that is binding precedent in this circuit. Well, but there are other cases that hold contrary to Morales. You have a three-judge panel in Morales. You have three-judge panels in the Bilbrey case, some of these other cases that we cited. So there's a split within the circuit. There's a split among the circuits. You mean that qualified immunity is not – can go to the jury? Yes. Absolutely. We cited a string of cases. That's news to me. Yeah. Well, it's in the brief. We cited three different cases that clearly hold that there's a fact component. And in other circuits, including – Well, I think there is no dispute that there is step one. And you, Morales, said step one is a factual question for the jury, for the qualified immunity itself. Step one is essentially the question of whether a constitutional violation occurred. Yes. Right? And that – I think there's no dispute that is a factual question for the jury. What Morales says is that step two analysis is a question for the – legal question for the judge. So are you saying that there's case law from other circuits, or is this circuit saying that step two, clearly established analysis, is a factual question for the jury? In part, yes. And again, we've cited those cases. I'd have to get to the portion of the brief. If you're – what you're saying is that there can be factual disputes that affect the step two analysis, then I think that's correct. But the ultimate question of whether the law is clearly established is a question for the judge. I think that step two is sometimes – and has been – and I get that the trend is moving away from this. But sometimes step two is viewed as a two-part analysis. Is – does the case law make this right clear? And that's clearly for the trial judge. The jury is not asked to read any case law. Right. But there could be a factual dispute that affects that. And that next question, I believe it applies in the Fifth Circuit, where Judge Fitzwater sits, is would all reasonable juries know that they were violating the right? And when you ask a question like that, objective reasonableness, that's a jury question. And so judges – and again, there seems to be a circuit split that remains even after the Saussure case in 2001. So I would just suggest it's not – it's not clear that Morales is the only way to go. I don't want to spend too much time on this, because I did want to address some of the other points, including the point that there's any reason to potentially send this back to Judge Alsup. The defense, I think, is arguing that one of the problems is that it was just the jury that had to determine prong two, and Judge Alsup never determined prong two. That's not true. Judge Alsup determined prong two four separate times in this case. In ruling on the motion to dismiss, of course, there's a much more limited record. In ruling on the motion for summary judgment, a more robust record. In drafting the jury instructions, Judge Alsup said, all the law I have given to you is clearly established, so it's a third time. And then in ruling on all the post-trial motions, the judge analyzed qualified immunity, including prong two yet again. And so to the extent there was an error in giving prong two to the jury, I would say it was asking them to decide a somewhat factual question, would all reasonable officers know, whereas all of the times that the case law was resorted to to determine clearly established, Alsup had already done that. So I think it would be futile to send the case back to Alsup for that purpose. But more importantly, we have forfeiture. They didn't preserve the argument. And if we win on the Bain Act, which we have, and they don't, I mean, I didn't hear an argument in the briefs or here today saying that we didn't have sufficient evidence to prevail on the Bain Act. Is there a due process problem with the damages? That's the next point I wanted to get to. I don't think so. Again, first of all, forfeiture. That one they clearly never objected to. With regard to the other instruction, they mentioned a colloquy with the court. But they never raised this issue. And down below, they're saying that we presume that there was a trebling of damages. That's true. And the reason is because we didn't know that they were going to be making any kind of due process argument. If the defense had said, there's a problem with this treble damage instruction, you need to give the jury some criteria and check against due process. And so this thing is tainted. In the remitter motion, in the new trial motion on remitter, we probably wouldn't have simply said, oh, it was a, this was all the product of a trebling, which of course we did to help justify the award because compensatory damages would be less if there had been a trebling, easier to meet the burden. But if they had said there's a due process problem, we would have argued in the alternative, maybe there wasn't a trebling. We don't know. The jury didn't tell us. So we should analyze this as an all compensatory award. And the judge would have done that. They precluded anybody from being able to do, and this is the reason why you need to make your objections in the trial court. It wasn't fair to us. It wasn't fair to the court. It would waste our resources to force us to do this all over again, bring our plaintiffs back for another trial because they didn't make a key point about treble damages. They never had it on their mind. They claim that they argued it at some point. The district judge had focused on this, and that was where it came up, and now they're relying on this. Let me ask you this. Is trebling compensatory damages under the Bain Act, is that punitive? It's not punitive damages. It's punitive in nature, and there's a lot of cases that discuss it. What's the difference between punitive in nature and punitive damages? Punitive damages, and I can cite to some cases. We put some in the briefs. Traditional punitive damages are, number one, completely uncapped. It's at the complete discretion of the fact finder with no checks or limits to it. It's decided in California lots, decided by clear and convincing evidence. The statutory penalties or punitive in nature statutory penalties are mandatory and set by the legislature, although there may be discretion that we pointed to a lot of statutes where there's discretion to set these kind of penalties. Punitive damages are 100% within the discretion of the jury. If you look at the Bain Act where it says you may award up to three times damages, it says, but in no event less than $4,000. The award is mandatory if you find this violation. By the way, as we pointed out, the Bain Act was drafted to address an increase in hate crimes in the state of California. The legislature had a very strong interest in creating the statute to address this issue, imposing up to treble damages provision. The legislature could have, like it did with the unfair competition law, set forth criteria that a fact finder should use. The legislature in California decided it didn't need separate criteria. If you are committing a hate crime that is interfering with somebody's rights through threat, intimidation, or coercion, you're entitled to award up to three times the damages. Well, what, I mean, just because you think it's a good thing to do? The legislature has a lot of discretion, and the courts have shown a reluctance to question the way that the state legislatures go about it. I mean, the jury could have just said, well, you know, $100,000 in compensatory damages, that's it. It could have. And it was instructed. So what is, what should they have considered in deciding to go from $100,000 to, you know, $2 million? They could have considered all the facts of the case and whatever moved them. There's no specific criteria, and nor did there need to be, nor is there any case that says that there needed to be any specific criteria. Is there any case law you can point to that says when there is a cap on statutory damages or statutory penalties, either in the California law or in the circuit, that says when there is that type of cap, more jury instructions on how to exercise their discretion on where to calculate the statutory penalties is or is not required? No. No, Your Honor. No case says either way. Not even in an analogous, under analogous statutory scheme? No. We have a lot of cases that we've cited that talk about more traditional trouble damages, and obviously punitive damages are a different thing. But this would be the first court, I think, if the court were to adopt what the defendants are suggesting, would be the first state or federal court at any level in the entire country that we're aware of that would make this rule. That would require the jury instructions where there's a cap on statutory penalties. A required cap, too. We would also be the first to say it's not required is what you're saying, though. Well, I think if it's... You have a case you can say, too, where a court has clearly said, so long as there's a cap, the judge doesn't need to instruct. No. In the cases about criteria, I think one thing that the defense failed to do in their briefs was really explain why this is a punitive damages award. It clearly wasn't. I mean, the jury was asked whether they wanted to give punitive damages. They said no. And this is a damage, an award that's set forth by the statute. The defense didn't do any analysis as to why this should be treated as... They just said this is punitive damages, and we're going to just go into the Haslip case and the Gore v. BMW. Let's talk about all the punitive damage cap cases with no explanation for how... I think California describes the statutory penalties as a... That they're similar to punitive damages because they both serve to motivate compliance with the law and punish, but they're distinct legal concepts, one which is entrusted to the fact finder, the other to the legislature. It's Beeman, and then the California Court of Appeals also says that it's a distinct category of statutory penalty. Right. And it's the same thing that applies for... But it also seems to be... They acknowledge it bears some relationship to punitive damages. Absolutely. And again, there's a lot of cases that talk about how they're similar, but not quite the same. And in fact, we have a Supreme Court case. We didn't include this. I think we looked this up in response to their reply brief. It's a case from 1919, St. Louis I.M. versus Southern Railway Company... Oh, sorry. St. Louis I.M. and Southern Railway Company versus Williams, 251 U.S. 63. That talks about when you're reviewing a statutory penalty, the standard is pretty high to find it to be violative of due process. And then recently, the Ninth Circuit in Wakefield versus Vaisalas, V-I-S-A-L-U-S, 51 F. 4th. 1109, talks about due process clause and outer limits of damage awards. It talks about recent years we've evaluated punitive damage awards for constitutional limits, how the constitution limits award of statutory damages is less developed. And then they cite to that 1919 case. There's not as much case law out there. And was there any request in the trial court about instructions to the jury on how to exercise their discretion when awarding the Bain Act damages? No, absolutely not. No, absolutely not. Do you want to address the attorney's fees issues? Well, they raised it. Should they be addressing it first? I think we discussed at the start that we would just consolidate arguments. Is there anything you want to add to your briefing? Well, I don't think it was raised by the defense, the issue about the attorney's fees. But I'm happy to answer questions if the court has or respond. Well, there's two separate cases, right? And there's, so I think we're just hearing the arguments on the attorney's fees now. If you want, you're saying you would like to respond to what they argue? My understanding was that they would go first as the appellant on the issue. Okay. I'll give you some time to respond to any arguments they make about attorney's fees. Okay. Thank you, Your Honor. On the main appeal, I want to address two points. The first is the nature of this court's review, its review for harmless error. There's no real question there was an error about qualified immunity. It shouldn't have gone to the jury, clearly established law. At that point, this court's task becomes to determine what was the result, what was the harm. And the harm requires reversal of liability as a whole. We talked about the unlawful detention, unlawful search. There were good defenses available that were precluded. What about the equal to any hypothetical finding on that claim from the qualified immunity error? The consequence of the error was the instructions telling the jury the law of detention and search is crystal clear. Did you tell the district court that the instructions on qualifying immunity were prejudicing the other jury findings before they issued the instructions? No, Your Honor, but this is a harmless error analysis, which can only occur after the trial and is complete, the judgment is entered, that we can see the effect of a legal error. So there's the issue, the legal error of giving the question to the jury was raised. But do you have an obligation to raise problems with the objective from jury instructions that you see are problematic? Yes, but this was not a problem with a jury instruction in itself. It was a problem with giving the question to the jury at all. There's, under Morales v. Friendly... Well, my understanding is your argument is the exact wording of the injunctions, the way in which the judge said these things are clearly established. So he could have given a jury instruction that would not have had that level of detail, and there was no objection to it. That's correct. I'm not aware that a party needs to object on the harmless error, what will end up showing the harm of an error. The error, again, was giving this to the jury in the first place. There's actually no correct way, or I should say, yeah, there's no correct way to instruct a jury on the contours of clearly established law. That's a court question. It depends on a close reading of case law. So the error was there. Right. I understand there is an error in giving question to the jury, but your argument seems to be different from that, that there's a separate argument that the way in which the judge instructed the jury on the qualified and meaning analysis affected other issues that the jury decided, which seems to be a completely different question from whether it was error just to send the question to analysis to the jury. I disagree. I think that goes to show the harm of the initial error. When it comes to the equal protection theory, an element here was that Deputy Holland acted out of racial bias or prejudice, and the jury was made much more likely, prejudicially more likely, to this clearly established law. That told the jury any violation here, he would have known. Why would he do it? It seems to me that there is an opportunity to say, you know, District Court, we understand you're going to send the question to the jury, but you shouldn't say these things when you do it. And you didn't say that, right? There was no objection to that effect. Is that right? That's correct. The second point I want to touch on is Bain Act, treble damages, penalty award. The basic question, the first question is whether this is the kind of award that is governed by due process constraints. That's what we're arguing about when we talk about punitive damages. And there's a California Supreme Court case interpreting a very, very similar statute, a treble damages statute. This is the very recent decision of LAUSD, Unified School District, the Superior Court. It's 14 Cal 5th, 758. And that's a 2023 decision. That case held of a statute that allows up to treble damages penalty, it is punitive and it's governed or I should say a municipality is not liable for damages under that statute. That's a classic kind of check, due process check on punitive damages awards. Against the municipality. Yes, the municipality was a defendant and the house... Here we have individuals. That's correct. And so it's not precisely on point. The idea here is a treble damages statute, penalty statute triggers due process constraints on an award, constraints that include no such award against municipality and also in our case, the need to instruct the jury. Right. So, but I would, I think the argument is that this is not a completely unconstrained punitive damages award. Even if they're punitive in nature, they're by statute limited to treble damages. So that, and what the California courts have said, because of that, the due process considerations and requirements are different. Actually, the court, the case I just cited was talking about a treble damages capped. I understand, but there's a difference between that and whether, you know, again, we have a California court of appeals case saying that because of the cap, that it's not the plaintiff's burden to show that the defendant can pay. I'm sorry. I'm still not clear on what that case is. And the Robert L. Cloud case says a double damages capped penalty is still bound. I'm talking about Rich v. Schwab, Calab case decided in 1998. Rich v. Schwab is talking about a statute that's a different kind of statute. Right, but it imposes a treble, it allows for a treble statutory penalty. I don't believe it allows for a treble damages penalty. The Rich v. Schwab penalty is, and this is Cal Civil Code section 1942.5H. That's the statute that's being discussed in Rich v. Schwab. That statute allows for a $100,000 to $2,000 penalty. It's not at all a treble damages penalty. Okay. It puts a cap on it. Yes. And it has something that's punitive in nature. I don't — I'm not aware of any case saying that's a punitive in nature penalty. And on the other side, we do have that Robert L. Cloud case where there's a double cap. That's a Cal court of appeals case on a much closer statute. Okay. I have one last — just along this line, I just — I have one last question for you, at least from my perspective, that is. So on this particular issue of damages under the Bain Act, we review for plain air. To the extent that this issue wasn't raised when the jury was still around, yes. Well, it wasn't — it just wasn't raised to the judge. I mean, there was — it's reviewed for plain air. So when you get to plain air, the question is, you know, it's obvious that the judge would have known that he had to give these instructions. So usually there's a case or cases along these lines that you could point to and say, hey, judge, you know, it's clear right here. And as I hear your argument today, I don't hear you pointing to any cases that would have alerted the judge. It's — there's no question that under federal due process standards, a jury needs to be instructed on the purpose of punitive damages awards and to calibrate their discretion. The district court actually acknowledged that it failed to do that. The punitive damage — you know, the standard punitive damages instruction with respect to general punitive damages for the 1983 claims. But — but — and it's not tailored to the Bain Act. I acknowledge that. But we've been discussing the parameters here. There was a cap that's not — doesn't seem to be identical to traditional punitive damages. To be clear on — There was a general verdict. So we don't really know what happened. There was an instruction — The general verdict was at the request of the defendants. The judge — nobody pointed out to the judge, you know, hey, look, here's a — or we can't point to the judge and say, look, you should have known that you had to give — even though there's a cap on three times actual damages, it's obvious you should have given some specific instructions. There's no case law. So how can we say that he clearly erred? At the time the district court entered the order on post-trial motions that actually made this award partly punitive, that judge was on notice of the due process violation. In the very same order — What's key, though, is at the time the instructions were given. And again, I think this is an unusual instance of waiver. I obviously concede at that point we didn't raise this issue. But on the other hand, the original — Counsel, you — I want to give you some time to address the attorney's fees issues. On the attorney fees, certainly if the court reverses the judgment in any part, it should also reverse the fee award for redetermination based on any judgment entered later. On the other two categories of fees that we argue separately need to be reversed, I'm sure of the balance of whatever time if I need to respond. But I have nothing further to say to the briefs. Thank you, Counsel. Did you have anything further? Okay, I don't think then there's any need to respond on the attorney's fees. Thank you, Counsel, for your helpful arguments. This case is submitted.
judges: PAEZ, SUNG, Fitzwater